UNITED STATES of America,
Plaintiff–Appellee,

v.

James B. SPEARS, Defendant–Appellant.

No. 94–5575.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 3, 1995.
Decided March 16, 1995.

David A. Marye, Asst. U.S. Atty. (argued and briefed), Lexington, KY, for plaintiff-appellee.

Derek G. Gordon (argued and briefed), Anggelis, Gordon & Simpson, Lexington, KY, for defendant-appellant.

Before: MERRITT, Chief Judge; BROWN and BATCHELDER, Circuit Judges.

BATCHELDER, Circuit Judge.

Arguing insufficient evidence, the appellant James B. Spears appeals his jury conviction for conspiring to defraud a federally insured bank and to influence a loan officer, making false statements to influence a federally insured bank, bribing a bank loan officer, and aiding and abetting. Spears also challenges the district court's application of the sentencing guidelines finding more than minimal planning and obstruction of justice to support enhancement of his sentence. We affirm the conviction and the sentence enhancement for more than minimal planning. However, we vacate the sentence and remand for resentencing to permit the trial court to make findings consistent with this opinion with regard to enhancement for obstruction of justice.

## I.

Following indictment by the grand jury, a jury convicted the appellant of two counts of knowingly making false statements to influence a federally insured (FDIC) bank in violation of 18 U.S.C. § 1014; bribery of a bank loan officer in violation of 18 U.S.C. § 215(a)(1); conspiracy to knowingly make false statements to a bank and to commit bank fraud and bribery of a bank officer in violation of 18 U.S.C. § 371; and aiding and abetting commission of offenses against the United States in violation of 18 U.S.C. § 2. Spears was acquitted of one count of bank fraud and eight counts of making false statements to an FDIC bank. Spears's codefendant, Jack L. Cooper, was convicted of conspiracy, bribery, and seven counts of making false statements to influence an FDIC bank. Others involved in the charged offenses pled guilty and testified against Spears at his trial. Defendant Robert Sellers pled guilty to a single count of conspiracy. Loan officer Dan Patton pled guilty to corruptly accepting more than $100 from the other defendants with the intent of being influenced in connection with loan transactions.

Following a hearing on Spears's objections to the presentence report, the trial court sentenced Spears to fifteen months on each count, to run concurrently and to be followed by three years of supervised release. In determining Spears's sentence, Judge Forester included a two-point enhancement because the offenses involved more than minimal planning and a two-point enhancement for obstruction of justice by perjury.

On appeal, Spears argues that the evidence was not sufficient to support his conviction; that the district court erred in its factual finding that Spears engaged in more than minimal planning; and that the district court erred in enhancing his sentence for obstruction of justice because Spears perjured himself in testifying.

## II.

Spears and his co-defendants were engaged in a scheme whereby they submitted fraudulent paper work to the First National Bank of Nicholasville, Kentucky (FNB) and paid Patton for approving dubious automobile loans to customers of their used car dealership Edgewood Auto Sales (EAS).

Patton admitted that in granting loans to EAS customers, he occasionally violated the bank's loan policy regarding length of loans and vehicle age. Also, while Patton was head of FNB's installment loan department, it was commonplace for EAS personnel to submit credit applications and retail installment contracts that had been signed in

blank, although this was contrary to bank policy and to the explicit terms of the non-recourse dealer agreement between EAS and the bank. Unlike EAS, other car dealers submitted only fully completed paper work to FNB. Because Spears, Cooper and Sellers were paying him money, Patton did not confront them about suspect down payment notations and improper paper work.

The cash payments to Patton began in the fall of 1987, after he acquiesced to Cooper's request to reconsider an application and to grant a loan Patton had intended to deny for an older vehicle that would not qualify under FNB's policies. Payments of $300 in cash were given to Patton approximately every other week until the summer of 1988. Patton knew it was improper and illegal for him to accept the cash and did not ask the reason for the payments. Most of the cash was given to Patton by Cooper or by Sellers at Cooper's direction, but Patton specifically recalled at least one instance when Spears gave him an envelope obviously containing money. In addition to cash payments, EAS provided Patton with vehicles for his personal use.

During this time, the number of loans to EAS customers increased and, in the summer of 1988, the delinquency rate on EAS loans rose significantly, resulting in hundreds of repossessions—alarmingly higher than the normal rate of four to five cars per year. After FNB cancelled the nonrecourse agreement with EAS in July 1988, bank officials and auditors investigating the delinquent loans discovered the improperly completed forms and discrepancies in internal accounting reports, which had served to hide the high delinquency rate on EAS loans. The accounting improprieties were traced to Patton, who had re-written or changed computer codes designed to track loans, so that when FNB's computer had generated delinquency reports, it was not apparent that most of the delinquencies involved EAS loans.

Sellers admitted fabricating and inflating the cash down payment figures on paper work submitted to FNB and stated that he did so because it helped to get the loans approved. Sellers testified that Cooper, Spears, Patton and he all knew that they were submitting improperly completed paper work to FNB and that they had discussed the necessity of showing some figure on the forms indicating either a down payment or a trade-in. Sellers further testified that he, Cooper and Spears had discussed giving Patton money for the loans Patton was approving. Sellers knew it was improper and illegal to give Patton money, but he often gave money to Patton at the direction of Cooper or Spears. After FNB terminated Patton's employment, Sellers, Patton, Cooper and Spears agreed not to discuss the payments to Patton.

### III.

### *The conviction is supported by sufficient evidence.*

 Spears argues that the evidence is insufficient to sustain his conviction because the "most incriminating testimony" against him was given by accomplices. Sufficient evidence exists to support a criminal conviction if, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could accept the evidence as establishing each essential element of the crime. *Jackson v. Virginia,* 443 U.S. 307, 324–26, 99 S.Ct. 2781, 2791–93, 61 L.Ed.2d 560 (1979). A reviewing court does not reweigh the evidence or determine the credibility of the witnesses. *United States v. Bailey,* 444 U.S. 394, 414–15, 100 S.Ct. 624, 636–37, 62 L.Ed.2d 575 (1980). The credibility of witnesses is exclusively the province of the jury. *United States v. Bond,* 22 F.3d 662, 667 (6th Cir.1994). The mere fact that some key testimony was given by other defendants who testified under plea arrangements does not support reversal of a criminal conviction where the jury was informed of the plea arrangement and was instructed to weigh the evidence accordingly. Similar attacks on the credibility of accomplice-witnesses have been rejected by this Circuit. *See United States v. Stubbs,* 11 F.3d 632, 638 (6th Cir.1993); *United States v. Lee,* 991 F.2d 343, 349 (6th Cir.1993). The testimony of an accomplice, even if uncorroborated, will suffice to support a conviction under federal law. *United States v. Gallo,* 763 F.2d 1504, 1518 (6th Cir.1985), *cert. denied sub nom. Graewe v.*

*United States*, 474 U.S. 1069, 106 S.Ct. 828, 88 L.Ed.2d 800 (1986).

In this case, the record reveals that much of the evidence offered by the Government was independent of the accomplices' testimony, including documentary evidence and testimony of Spears's customers and bank employees. The jury was informed that witnesses Patton and Sellers were testifying under a plea arrangement. Moreover, the trial judge specifically instructed the jury to weigh that testimony with caution and to consider whether their testimony may have been influenced by the Government's promises not to prosecute them on other charges. The jury was instructed not to consider the guilty pleas of Patton and Sellers as evidence of Spears's guilt. The judge also specifically instructed the jury to consider evidence of Spears's good character along with all the other evidence in deciding whether Spears was guilty. In returning a verdict of guilty after due deliberation, the jury indicated that it found the evidence against Spears credible beyond a reasonable doubt.

 For a defendant to be convicted of making material misrepresentations to a bank, the Government must prove that the defendant knowingly made a false statement of a material fact to a federally insured bank for the purpose of influencing the bank's action. 18 U.S.C.A. § 1014 (West 1976 and Supp.1994). To convict Spears as a principal for the acts of others, the Government had to prove that Spears aided, abetted, counseled, commanded, induced or procured the commission of offenses against the United States. 18 U.S.C.A. § 2 (West 1969); *see United States v. Halliday*, 658 F.2d 1103 (6th Cir.), *cert. denied sub nom. Frank v. United States*, 454 U.S. 1127, 102 S.Ct. 978, 71 L.Ed.2d 115 (1981). At trial, Spears admitted that he knew it was wrong to misrepresent the amount of down payments but claimed that he did so at Patton's direction. Spears has argued that FNB could not have been influenced by anything he wrote on the forms submitted to the bank because FNB had pre-approved loan amounts for EAS cus-

tomers. However, the essence of the offense is not why the defendant made the false statements or whether the bank was actually influenced or defrauded; rather, the determinative factor is the *making* of the materially false statement with the intent to influence the lender. *United States v. Kennedy*, 564 F.2d 1329, 1341 (9th Cir.1977), *cert. denied sub nom. Myers v. United States*, 435 U.S. 944, 98 S.Ct. 1526, 55 L.Ed.2d 541 (1978); *see also United States v. Walker*, 871 F.2d 1298, 1305 n. 6 (6th Cir.1989) ("[B]ank fraud requires only a fraudulent statement designed to influence a bank's action.").

██ In this case, the record shows that Spears knowingly misrepresented down payment figures on retail installment credit applications. James Spears's signature appears on documents submitted to FNB, a federally insured bank, listing false down payment amounts.[1] Spears did not disclaim his signature, which was verified by his brother. The record contains abundant and credible evidence that the down payment amount listed on a loan application influences the bank's decision whether to grant the loan; thus, the false statements Spears made concerning down payments were material to whether FNB would grant the loans to EAS customers. The jury accepted as credible the evidence presented by the Government on each element of these charges.

 To convict the defendant of bribery of a bank loan officer, the Government must prove that the defendant gave, offered or promised something of value in excess of $100 to an officer, director, employee, agent or attorney of a financial institution, and that the defendant did so with the intent to influence or reward the person in connection with any business or transaction of the institution. 18 U.S.C.A. § 215(a)(1) (West Supp.1994). Evidence was offered at trial that Spears, on at least one occasion, personally gave $300 in cash to FNB loan officer Patton, that Spears was aware of other payments to Patton, and that Patton understood his handling of loan applications from EAS customers to be the reason for the improper and illegal payments

---

1. For one November 1987 sale, the down payment that had been recorded and processed as $882.25 was proven to have been $332.25. For another sale in June 1988, a cash down payment of $645 was recorded when, in fact, the customer had paid no money down at all.

of cash. Spears's challenge regarding the source of this testimony does not affect its sufficiency. The Government presented evidence as to each element of this charge, and the jury found it credible.

To convict Spears of conspiracy, the Government had to prove that Spears and at least one other person conspired to commit any offense or to defraud the United States, or any agency thereof, in any manner or for any purpose, and at least one of the persons did some act to effect the object of the conspiracy. 18 U.S.C.A. § 371 (West 1966). The nature of the agreement comprising a conspiracy may be inferred from circumstantial evidence. *United States v. Butler*, 618 F.2d 411, 414 (6th Cir.), *cert. denied*, 447 U.S. 927, 100 S.Ct. 3024, 65 L.Ed.2d 1121 (1980). Evidence was presented at trial to show that Spears, Cooper, Sellers and Patton were involved in an ongoing series of offenses including bribing a bank official and making false statements for the purpose of influencing a federally insured bank. The record reflects that these offenses were committed routinely in order to obtain loans so EAS customers could purchase cars with funds obtained from FNB. The evidence included testimony of the defendant, his customers, bank employees, and others who had admitted their involvement in the charged offenses, as well as documentary evidence. This evidence was more than sufficient to support the jury's conviction of Spears on this charge.

Because the trial judge instructed the jury concerning the necessary elements of the charged offenses and the record includes sufficient evidence to prove each element of each offense, Spears's conviction on each count is affirmed.

### IV.

***The district court did not err in finding more than minimal planning supported enhancement of the sentence.***

Spears argues that, in sentencing him, the district court concluded that he should have

been convicted on the other counts of which he was acquitted.[2] He contends that the trial judge improperly inferred that he should have been convicted of making false statements for the eight instances charged in which he wrote "DISC" or "discount" instead of down payment amounts on forms submitted to the bank and that the judge improperly considered all ten instances to find that repeated acts over a period of time justified a two-point enhancement for "more than minimal planning." Spears claims that there is no basis in the record for the judge's inference.

In the commentary to § 1B1.1 of the United States Sentencing Guidelines (U.S.S.G. or "the Guidelines"), "more than minimal planning" is defined as:

> more planning than is typical for commission of the offense in a simple form. "More than minimal planning" also exists if significant affirmative steps were taken to conceal the offense, other than conduct to which § 3C1.1 (Obstructing or Impeding the Administration of Justice) applies.
>
> *"More than minimal planning" is deemed present in any case involving repeated acts over a period of time, unless it is clear that each instance was purely opportune.*

U.S.S.G. § 1B1.1, comment. (n. 1(f)) (emphasis added).

The district court must be given much deference in reviewing the evidence for sentencing. 18 U.S.C.A. § 3742(e) (West Supp.1994); *United States v. Ivery*, 999 F.2d 1043, 1045 (6th Cir.1993). The findings of a sentencing judge will only be reversed for clear error. *Id.* The record clearly indicates that the judge believed the jury had given Spears the benefit of the doubt in acquitting him of the eight counts involving discount down payment notations and that the judge disagreed with this conclusion. However, the fact that Spears was acquitted

---

**2.** Counts 2–11 of the indictment charged Spears with making false statements to influence a federally insured bank. Spears was convicted of the two counts wherein he inflated or fabricated down payment amounts. See supra n. 1 and

accompanying text. He was acquitted of the eight counts wherein he misstated down payment amounts by writing "DISC" or "discount" on the down payment blank.

of some counts does not mean that the sentencing judge was required to believe that Spears did not make the false statements charged. "Guilt beyond a reasonable doubt is not the standard to be applied at sentencing. Instead, the preponderance of the evidence standard applies to sentencing procedures under the guidelines." *Ivery,* 999 F.2d at 1045.

■ The number of acts committed during the offense is not the dispositive question. A preponderance of evidence in this record supports the judge's finding of repeated acts over a period of time. The two false statement counts of which Spears was convicted occurred in November 1987 and June 1988. There is nothing in the Guidelines or case law to indicate that a sentencing judge may not find that two instances of overt falsification over a period of seven months, combined with ample evidence of eight other instances of misrepresentation over the same period of time, support enhancement of the defendant's sentence for more than minimal planning. The evidence demonstrates a degree of deliberate planning inconsistent with purely opportune conduct. The district court did not err in finding more than minimal planning.

## V.

*Specific findings are necessary to support enhancement of the sentence for obstruction of justice by perjury.*

■ Spears argues that in applying a two-point enhancement to his sentence for obstruction of justice, the district court failed to make an independent finding that his testimony was perjured or to specify which portion of his testimony was perjured. The Guidelines call for a two-point enhancement of a defendant's sentence "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense...." U.S.S.G. § 3C1.1. A defendant's denial of guilt is not a basis for application of this provision; however, perjury is one type of conduct that justifies the enhancement. *Id.,* comment. (nn. 1, 3(b)).

■ A district court may not base a finding of perjury upon the mere fact that the jury returned a verdict of guilty after the defendant testified. *Mathews v. United States,* 11 F.3d 583, 586–87 (6th Cir.1993). To ensure that defendants who are found guilty are not penalized by automatic enhancement of their sentences under § 3C1.1 for having testified, the United States Supreme Court has required that if a defendant objects to an enhancement for obstruction of justice, the district court must "review the evidence and make independent findings necessary to establish" the perjury. *United States v. Dunnigan,* —— U.S. ——, ——, 113 S.Ct. 1111, 1117, 122 L.Ed.2d 445 (1993).

■ Allegedly false statements should be evaluated in a light most favorable to the defendant. U.S.S.G. § 3C1.1, comment. (n. 1); *United States v. Head,* 927 F.2d 1361, 1372 (6th Cir.), *cert. denied sub nom. Black v. United States,* 502 U.S. 846, 112 S.Ct. 144, 116 L.Ed.2d 110 (1991). However, this does not require the sentencing judge to disregard all evidence that is unfavorable to the defendant. *See United States v. Crousore,* 1 F.3d 382, 385 n. 3 (6th Cir.1993). The sentencing judge resolves the conflict in credibility when a defendant's testimony is directly at odds with that of other witnesses. *Id.* at 385–86.

■ It is not enough for a sentencing judge to recognize conflicting testimony and resolve in his own mind which witness is credible. To comply with the Supreme Court's directive in *Dunnigan,* the sentencing judge must identify for the record at least some specific instances of conflicting testimony and specify which portions of the defendant's testimony he finds materially perjurious. *See United States v. Ledezma,* 26 F.3d 636, 644–45 (6th Cir.), *cert. denied sub nom. Zajac v. United States,* —— U.S. ——, 115 S.Ct. 349, 130 L.Ed.2d 305 (1994). The judge must, at least briefly, explain why the intentional perjury was material. *Id.; Crousore,* 1 F.3d at 384–85.

■ This record reveals that Judge Forester attempted to comply with § 3C1.1 of the Guidelines by reviewing the testimony of Sellers and Patton and stating that "I do believe that Mr. Spears testified falsely at

the trial...." One could fairly infer from the record that the judge's statement concerned those portions of Spears's testimony that conflicted with the testimony of Sellers and Patton as to material information regarding Spears's involvement in the charged offenses. However, we think that more than inference is required. Because the judge did not identify with specificity the portions of Spears's testimony that he found to be intentional lies, or address their materiality, it is necessary to vacate the obstruction enhancement and remand for resentencing after specific findings consistent with this opinion.

## VI.

Spears's conviction and the district court's application of the Guidelines enhancing his sentence for more than minimal planning are AFFIRMED. Spears's sentence is VACATED and REMANDED for specific findings regarding enhancement for obstruction by perjury and for resentencing.