61 F.3d 904
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Alvin WALKER, Defendant-Appellant.
 No. 94-6293.
 United States Court of Appeals, Sixth Circuit.
 July 18, 1995.
 
 Before: MARTIN and SILER, Circuit Judges; JOINER, District Judge.*
 PER CURIAM.
 
 
 1
 Defendant Alvin Walker appeals his jury conviction and sentence for conspiracy to possess with intent to distribute cocaine and the substantive charge of aiding and abetting possession with intent to distribute cocaine. Walker argues that the evidence was insufficient, and, alternatively, that the court should not have enhanced his sentence for obstruction of justice. Based on the following discussion, we affirm.
 
 I.
 
 2
 A co-defendant, Morris Atkins, pled guilty and testified for the prosecution that, on the morning of October 23, 1993, he stopped by Walker's beauty shop where Walker told him that he would pay Atkins $3,000 to arrange a purchase of two kilograms of cocaine. Atkins went home and made arrangements with Eric Finch, who turned out to be an informant for the Shelby County Sheriff's Department. Atkins returned to Walker's beauty shop and informed him of the arrangements with Finch. Walker then got into Atkins's car, and went back to Atkins's home, where they called Finch to advise him that Walker was ready.
 
 
 3
 In the meantime, Finch contacted Officer Murray Tucker of the Shelby County Sheriff's Department to set up the undercover operation. Tucker was put on a three-way call between Finch and Atkins and heard Atkins state that "Big Al" had his money ready. Tucker advised Finch to delay the deal for a while because it was Saturday and fewer officers were available to set up the undercover apartment.
 
 
 4
 Later, Walker, his nephew Jimmy Walker, and another individual followed Atkins to a Burger King parking lot where they met Finch. Finch then led them to an apartment complex across the street. Upon arriving at the complex, defendant Walker went to the trunk of the Cadillac and retrieved a bag. He and Jimmy Walker went inside the apartment complex with Finch.
 
 
 5
 An undercover officer posing as a drug dealer let the three of them inside the apartment. Other officers were observing the events on a TV monitor in the rear of the apartment. Defendant Walker and Jimmy Walker sat down at a table where the undercover officer placed a package of cocaine in the middle of the table. Jimmy Walker cut a flap in the package, stuck his hand down into it, and then passed it to defendant Walker. Walker opened the package and lifted up the window, placing his hands inside the package of cocaine. Defendant then asked if he could wash his hands. He washed his hands, and returned.
 
 
 6
 The undercover officer asked defendant Walker, "Is this what you are wanting?" Walker responded, "Yes. We will be back in two or three minutes." Defendant Walker, Jimmy Walker, and Finch left the apartment. About five minutes later, they returned with defendant Walker carrying a green duffle bag which he set on the table. Jimmy Walker pulled money out of the bag, and out of his own pockets. Defendant Walker also pulled money from his pockets and laid it on the table. Jimmy Walker then went to the kitchen area and picked up the package containing the cocaine.
 
 
 7
 The takedown signal was given and the officers arrested defendant and Jimmy Walker. The officers found approximately $24,000 cash on the table. They also found two beepers and $1,600 in cash on the defendant.
 
 
 8
 Defendant testified at trial that he was unaware of any criminal activity occurring that day. Specifically, he asserted that he "was a 'pawn' strategically positioned by Atkins." Although Walker was with Atkins from approximately 11:30 a.m. until 9:00 p.m., he testified that he had no idea that any drug activity was occurring, and that he expected Atkins to drop him off at his beauty shop once Atkins finished "taking care of business...." Although the video showed Walker running his fingers through the cocaine and then going to the bathroom to wash his hands, he testified that he did not get cocaine on his hands, but merely washed his hands because they were dirty.
 
 II.
 
 9
 Walker argues that the evidence was insufficient to support a conviction, and, thus, the court should have granted his motion for acquittal. First, he argues that the conviction for aiding and abetting possession with intent to distribute should be overturned because he was never in actual possession of the cocaine. He also argues that the conviction should be overturned because he was "unwittingly 'caught up' in [the] drug deal," and followed through only out of fear for his personal safety. A review of the record reveals sufficient evidence supporting the jury's verdict, and virtually no evidence supporting Walker's story.
 
 
 10
 Evidence is sufficient to support a conviction if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). The testimony of Atkins, Finch, and various undercover police officers fully supported Walker's conviction. Moreover, this testimony was corroborated by a videotape showing Walker and his nephew examining cocaine, leaving the apartment, returning with a bag of $23,000 in cash, and supplementing the cash with money from their pockets. Although Walker was not in actual possession of the cocaine, he was in constructive possession of the cocaine in that his co-conspirator and nephew Jimmy Walker was in the process of picking it up after they had paid approximately $24,000 in cash. Circumstantial evidence will support a conviction, Tilley v. McMackin, 989 F.2d 222, 225 (6th Cir.1993), and such evidence need not remove every reasonable hypothesis except that of guilt. Neal v. Morris, 972 F.2d 675, 677-78 (6th Cir.1992). Accordingly, we hold that the evidence was more than sufficient to support Walker's conviction.
 
 III.
 
 11
 Walker argues that the court wrongfully imposed a two-level enhancement of his sentence for obstruction of justice based on perjury. He alleges that his testimony was not substantially different than the government's proof, and that the court failed to conduct an independent review of the evidence before enhancing his sentence. Walker's argument is without merit.
 
 
 12
 This court will overturn a district court's enhancement of a sentence for obstruction of justice only when an abuse of discretion is evident. United States v. Ledezma, 26 F.3d 636, 645 (6th Cir.), cert. denied, 115 S.Ct. 349 (1994). While the district court's decision must be based on a preponderance of evidence, we review factual findings for clear error. Id.
 
 
 13
 A district court may not base a finding of perjury upon the mere fact that the jury returned a guilty verdict following the defendant's testimony. United States v. Spears, 49 F.3d 1136, 1143 (6th Cir.1995) (citations omitted). The district court's determination under Sec. 3C1.1 is sufficient if "the court makes a finding of an obstruction or impediment of justice that encompasses all of the factual predicates for a finding of perjury." United States v. Dunnigan, 113 S.Ct. 1111, 1117 (1993). Perjury occurs when "a witness testifying under oath ... gives false testimony concerning a material matter with the willful intent to provide false testimony...." Id. at 116. "To comply with the Supreme Court's directive in Dunnigan, the sentencing judge must identify for the record at least some specific instances of conflicting testimony and specify which portions of the defendant's testimony he finds materially perjurious." Spears, 49 F.3d at 1143.
 
 
 14
 Prior to setting forth some of the Walker's statements, the court analyzed the testimony for materiality, which it properly defined as "evidence that if believed would tend to influence or effect the issue in determination." See USSG 3C1.1, comment. (n. 5). The court concluded that, "[t]here's no question that had the jury believed Mr. Walker that it would have certainly affected the issue under determination...." Walker's intimation that the materiality inquiry was actually punishment for exercising his right to testify is incorrect. Moreover, the court did not find the Walker's statements to be perjurious simply because the jury found him guity. The court found the statements to be perjurious based on an abundance of conflicting testimony and the videotape of the cocaine transaction.
 
 
 15
 The court specifically set forth the perjurious testimony and explained its materiality:
 
 
 16
 There is no question that had the jury believed Mr. Walker that it would have certainly affected the issue under determination, that is, whether or not he was guilty under Count 1 and Count 2. Because if you took his story, although it was not completely favorable to him in some respects, he did admit he was there. And he admitted he was with Mr. Atkins [for approximately ten hours].
 
 
 17
 But if you took his story that he was merely wanting to get back to his business and Atkins simply wouldn't take him home and he was kind of trapped there and he didn't really know what was going on and didn't even know there was cocaine involved until he cut open the package and then he just couldn't get away, if you took all that as true then certainly the jury might have found him not guilty.
 
 
 18
 They didn't do that. Probably considerable reliance on the fact there was a lot of testimony to the contrary, and secondly there was a tape that showed him counting out the money and he didn't look like he was under any duress of any kind.
 
 
 19
 This was an effort to by false statements to influence or affect the issue the [sic ] under determination, and the testimony is replete with false statements or statements that the Court would find by the preponderance of the evidence which is what I've determined in this stage were not true.
 
 
 20
 The district court's factual findings were not clear error, and its decision was based on a preponderance of the evidence. Accordingly, the court did not abuse its discretion.
 
 
 21
 AFFIRMED.
 
 
 
 *
 The Honorable Charles W. Joiner, United States District Judge for the Eastern District of Michigan, sitting by designation