**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**James W. MURRAY, Defendant–
Appellant.**

**No. 01–6501.**

United States Court of Appeals,
Sixth Circuit.

June 2, 2003.

Before CLAY and GIBBONS, Circuit Judges; and DUGGAN, District Judge.*

CLAY, Circuit Judge.

Defendant, James W. Murray, a federal prisoner, appeals from the judgment of conviction and sentence entered by the district court on October 29, 2001, following Defendant's guilty plea conviction to one count of possession of cocaine base with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(A); one count of conspiracy to distribute cocaine base, in violation of 21 U.S.C. § 846; and one count of carrying a firearm during or

in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c), for which Defendant was sentenced to a term of 248 months' imprisonment and five years of supervised release.

Represented by counsel, Defendant raises two issues for appellate review: the first issue involves a challenge to the district court's refusal to set aside Defendant's guilty plea; and the second issue involves a challenge to the district court's application of a sentence enhancement for obstruction of justice. Proceeding *pro se* in a supplemental brief, Defendant raises the issue of whether there was sufficient evidence to support his conviction for carrying a firearm during or in relation to a drug trafficking crime.

For the reasons set forth below, we AFFIRM Defendant's conviction and sentence.

## BACKGROUND

### Procedural History

Defendant was indicted on a three-count superseding indictment charging him with conspiracy to distribute in excess of fifty grams of cocaine base, carrying a firearm in connection with the conspiracy, and possessing with the intent to distribute in excess of fifty grams of cocaine base. Following Defendant's arrest and indictment, he moved to suppress a quantity of cocaine recovered from a search of his person. A suppression hearing was held, after which the district court denied Defendant's motion. A second motion to suppress was filed relating to a quantity of cash and a firearm which had been seized on a separate occasion; the district court denied this motion as well.

* Honorable Patrick J. Duggan, United States District Judge for the Eastern District of Michigan, sitting by designation.

A jury trial ensued on July 11, 2001. Following the testimony of three government witnesses, Defendant withdrew his previous plea of not guilty and entered a plea of guilty to all three charges set forth in the superseding indictment. Following a long colloquy with Defendant, the district court accepted Defendant's plea.

A presentence investigation report ("PSR") was prepared following the entry of Defendant's guilty plea. In the PSR, the probation officer determined that Defendant's sentencing range under the guidelines was 295 to 353 months' imprisonment. This determination was made using a base offense level of 36 and applying a two-level enhancement for obstruction of justice under USSG § 3C1.1, for a total offense level of 38 and a criminal history category calculated at I.

On September 18, 2001, about two months after entering his guilty plea, Defendant filed a motion to set aside his guilty plea. The district court entered a memorandum and order denying without a hearing Defendant's motion to set aside his guilty plea.

Defendant was sentenced on October 22, 2001. At the sentencing hearing, the district court accepted the PSR's recommendation to enhance Defendant's offense level by two levels for obstruction of justice under USSG § 3C1.1; however, the district court also determined, contrary to the PSR's recommendation, that Defendant was entitled to a two-level reduction for acceptance of responsibility. The court then determined that Defendant's restrictive guideline range was 248 to 295 months' imprisonment and sentenced Defendant at the low end of the guideline range to a term of 248 months' imprisonment. This timely appeal ensued.

### Facts

The facts relating to Defendant's indictment stem from incidents occurring on December 11, 2000, and April 3, 1999, along with information gathered during the investigation of those incidents.

### A. December 11, 2000 Incident

Defendant caught a taxi-cab at about 7:15 p.m. on December 11, 2000, in Nashville, Tennessee, and asked the driver, who was accompanied by a friend, to take him to Murfreesboro, Tennessee. Because the fare to Murfreesboro would be large, consistent with company policy the cab driver requested that Defendant pay up-front. Defendant gave the driver $30.00 toward the approximately $60.00 fare.

As the driver entered the Murfreesboro area on Interstate 24, he asked Defendant which exit he should take, and Defendant advised the driver to continue driving along the interstate. At about this time, the cab driver noticed that Defendant was "fidgeting" with something in the waistband of his pants, which caused the driver to become concerned.

Upon reaching Manchester, Tennessee, the driver indicated that he needed to exit the interstate to refuel. The driver exited the interstate, drove to a nearby gasoline station, and went into the station while his friend, who had been riding in the passenger seat, remained behind to pump the gas. The driver advised the station clerk to call the police because he had a suspicious passenger in his cab. Officers from the Manchester Police Department arrived shortly thereafter and, after speaking with the driver, drew their weapons and asked Defendant to exist the cab. Defendant complied, and while conducting a pat down search of Defendant, the officers noticed what was described as a foreign object just beneath the waistband of Defendant's pants. The officers asked Defendant to identify the object, and after twice refus-

ing to answer, Defendant was handcuffed and put on the ground. The officers removed a brown paper bag with a rubber band around it from Defendant's pants, and inside the bag was a clear bag containing what later tested to be 289.2 grams of cocaine base or "crack."

### B. April 3, 1999 Incident

Defendant was stopped on April 3, 1999, by officers from the Franklin County, Tennessee, Sheriff's Office for improper display of vehicle registration. The officers ran his information through the dispatcher and learned that Defendant's driver's license had been suspended, and that he had outstanding warrants for his arrest in Franklin County. The officers conducted a search of Defendant's vehicle and found a plastic bag containing what was believed to be cocaine hydrochloride, along with a loaded Rossi .357 caliber revolver. In the handbag of the vehicle's passenger, Kim Turrentine, officers found "rolling papers" and a bag suspected to be marijuana stems. Defendant was in possession of $11,920 in U.S. currency.

### C. Information Gathered as a Result of Investigating the Above Incidents

During the course of investigating Defendant's conduct as outlined above, agents with the Drug Enforcement Administration ("DEA") interviewed various individuals who claimed to have known of Defendant's drug trafficking activities. Among these individuals were Willie Allgood and Michael Hayworth. According to the DEA agents, Allgood claimed that between 1997 and 1998 when he was dealing in cocaine base, he sold at least twenty ounces (567 grams) of cocaine base to Defendant. Allgood also admitted that during 1998 and 1999, he and Defendant pooled their funds to purchase a total of between six and seven kilograms of co-

caine hydrochloride, the majority of which they later "cooked" into cocaine base.

Hayworth described traveling to Sacramento, California with Defendant where they purchased a kilogram of cocaine hydrochloride for $1,600. Hayworth also related an occasion wherein he and Defendant traveled to Nashville to obtain cocaine hydrochloride.

### DISCUSSION

### I. Denial of Defendant's Motion to Withdraw his Guilty Plea

Defendant first argues that the district court abused its discretion in denying his motion to set aside his guilty plea. We review a district court's denial of a motion to withdraw a guilty plea for an abuse of discretion. *United States v. Bazzi*, 94 F.3d 1025, 1027 (6th Cir.1996) (*per curiam*); *United States v. Bashara*, 27 F.3d 1174, 1180 (6th Cir.1994), *superseded on other grounds by statute, United States v. Caseslorente*, 220 F.3d 727, 734 (6th Cir. 2000).

### A. Legal Standards

Federal Rule of Criminal Procedure 32(e) provides that a court may permit a defendant to withdraw a guilty plea prior to sentencing "upon a showing by the defendant of any fair and just reason." The defendant bears the burden of proving that the withdrawal of the plea is justified. *United States v. Stephens*, 906 F.2d 251, 252 (6th Cir.1990).

This Court has promulgated factors that should be considered when determining whether to grant or deny a defendant's motion to withdraw his guilty plea under Rule 32(e). These factors include:

(1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted

or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*Bashara,* 27 F.3d at 1181; *see also United States v. Durham,* 178 F.3d 796, 798 (6th Cir.1999); *United States v. Pluta,* 144 F.3d 968, 973 (6th cir.1998); *United States v. Spencer,* 836 F.2d 236, 239–40 (6th Cir. 1987).

Rule 32(e) is designed "to allow a hastily entered plea made with unsure heart and confused mind to be undone." *United States v. Alexander,* 948 F.2d 1002, 1004 (6th Cir.1991) (*per curiam* ) (citing *United States v. Carr,* 740 F.2d 339, 345 (5th Cir.1984)). The rule is not designed to allow a defendant " 'to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes he made a bad choice in pleading guilty.' " *Id.* (quoting *Carr,* 740 F.2d at 345).

### B. Application of the Legal Standards to Defendant's Case

■ On appeal, Defendant argues that four of the above-enumerated *Bashara* factors support his position that the district court abused its discretion in denying his motion to withdraw his guilty. Specifically, Defendant claims that the factors supporting his claim are the circumstances surrounding his plea (factor 4), his nature and background (factor 5), the degree to which he has had prior experience with the criminal justice system (factor 6), and the potential prejudice to the government if he is allowed to withdraw his plea (factor 7). Defendant "concedes" that the other factors do not weigh in his favor, but claims that overall, the factors inure to his benefit. Def's Br. at 8. We disagree.

We begin with a discussion of those specific factors which Defendant claims weigh in this favor.

### i) Circumstances Surrounding Defendant's Plea (Factor 4)

Regarding the circumstances surrounding his plea, Defendant argues that the plea was "hastily" entered inasmuch as it was not done pursuant to a plea agreement made in a "calculated bargain" with the government. Def's Br. at 9–10. Defendant contends that because the prospect of Defendant pleading guilty had not been "seriously entertained" prior to trial, his counsel did not have the opportunity to "fully explore" with Defendant the jail time consequences of his plea, or the elements of the offense to which he was pleading.

As the government argues in its brief on appeal, the record does not support Defendant's claim. Defendant was indicted on December 15, 2000, and a superseding indictment was returned on May 23, 2001. Defendant pleaded not guilty to the charges and the matter proceeded to trial. At trial, on July 11, 2001, the government called two witnesses and was in the course of examining its third witness when a lunch break was taken. It was during the break, after Defendant had heard much of the government's testimony against Defendant, that he decided to enter a plea of guilty. After informing the court of his decision to plead guilty, the district judge engaged in a long colloquy with Defendant in accordance with Federal Rule of Criminal Procedure 11(d) to insure that the plea was being voluntarily made. The sum and substance of this long colloquy reveal that all steps possible were taken to insure that Defendant made the plea freely without threat or coercion, that he understood that he had constitutional rights and that by pleading guilty he was forfeiting those

rights, that he understood the nature of the charges to which he was pleading, as well as the possible penalties associated with each charge, and that Defendant had discussed the charges and penalties with his counsel. At the end of this colloquy, the government stated the factual basis for its case on the record, Defendant admitted that the facts were true, and pleaded guilty.

Defendant points to a passage in the colloquy where the trial court asked Defendant if he understood the charges against him, to which Defendant responded a "majority." (J.A. at 49.) Defendant claims that this shows that his plea was made in haste. However, Defendant fails to point out that after he so answered, the district court carefully inquired as to what portion of the charges Defendant did not understand, and carefully explained the charges to Defendant. After doing so, the court inquired as to whether Defendant had any further questions, to which Defendant responded "no." (J.A. at 51.) Defendant then affirmed that his willingness to plead guilty was a result of "discussions which [he] ha[d] had with Mr. Cross [defense counsel] here just recently." (J.A. at 51.)

Based upon this long and careful Rule 11(d) colloquy between the court and Defendant, as well as based upon the fact that Defendant had heard the lion's share of the government's case against him, the record does not support a finding that Defendant entered the plea with "unsure heart and confused mind." *Alexander*, 948 F.2d at 1004.

ii) Defendant's Nature and Background (Factor 5) and Degree to Which Defendant has had Prior Experience with the Criminal Justice System (Factor 6)

Defendant argues that his lack of education (the PSR indicates that he attended college for an unspecified time but does not indicate how many credits, if any, Defendant received), as well as his lack of experience in the criminal justice system (the PSR indicates that Defendant's prior charges were dismissed early in the proceedings or were relatively minor in nature), weigh in favor of his plea being set aside. Defendant cites to no authority for this contention. As the government notes in its brief on appeal, while these factors may arguably weigh in favor of Defendant, they do not outweigh the countervailing factors as a whole.

iii) Potential Prejudice to the Government (Factor 7)

Defendant argues that no prejudice will result to the government if he is allowed to withdraw his plea because the only consequences of his doing so would be additional time and work to the attorneys, government agents, and witnesses involved. Defendant contends that these consequences are present in every case and therefore would serve to prohibit every defendant from withdrawing a plea. Defendant's argument falls woefully short of the mark inasmuch as Defendant fails to consider the point to which his case had proceeded when he entered his plea, as well as the amount of time that he waited to withdraw his plea.

Specifically, Defendant did not enter his plea until the government prepared for its case, proceeded to trial and had presented the testimony of two witnesses and part of a third witness. Then, Defendant waited about nine weeks from the time of pleading guilty to move to withdraw his plea. These circumstances would clearly serve to prejudice the government inasmuch as Defendant has now had the benefit of basically hearing the government's case-in-chief

against him, and the government has expended much time and resources in taking the case as far as it did before Defendant entered his plea. Under these circumstances, the government would be prejudiced in having to prepare and present its case over again. *See Durham*, 178 F.3d at 799 (finding prejudice to the government where the defendant had pleaded guilty from the time he was apprehended, but did not move to withdraw his plea until seventy-seven days later).

### iv) Remaining Factors (Factors 1 through 3)

As noted, Defendant concedes that the remaining factors (factors 1 through 3) do not inure to his benefit; however, for purposes of a thorough review, we shall briefly address these factors as follows.

In *Durham*, this Court opined that "[t]he strongest factor supporting the district court's denial of [the defendant's] motion is the length of time between [the defendant's] plea and the filing of his motion to withdraw." 178 F.3d at 798–99. The amount of time to which the *Durham* court was referring was seventy-seven days; in this case, Defendant waited about sixty-seven days. Thus, under this Court's jurisprudence, it is clear that this factor weighs against Defendant. *See id.; see also Pluta*, 144 F.3d at 973 (denying motion to withdraw guilty plea where the defendant waited more than four months to file motion; collecting cases in support); *United States v. Baez*, 87 F.3d 805, 807 (6th Cir.1996) (finding that sixty-seven day delay in moving to withdraw the defendant's guilty plea was strongest factor for denying the motion); *United States v. Goldberg*, 862 F.2d 101, 104 (6th Cir.1988) (holding that a fifty-five day delay was excessively "lengthy"); *Spencer*, 836 F.2d at 239 (finding that a thirty-five day delay

in moving to withdraw the plea provided a basis to deny the motion).

As to the second factor, Defendant has offered nothing by way of reason for his failure to move to withdraw sooner. *Compare Spencer*, 836 F.2d at 239 (noting that where a defendant is aware of a condition or reason for a plea withdrawal at the time the plea is entered, a case for withdrawal is weaker) (citing *United States v. Usher*, 703 F.2d 956 (6th Cir.1983)). Finally, as to the third factor, whether Defendant has asserted and maintained his innocence, Defendant admitted under oath that he committed the crimes as charged, and has not maintained his innocence since that time, thus permitting this factor to be weighed against Defendant. *See Spencer*, 836 F.2d at 240.

### C. Conclusion

In summary, the district court did not abuse its discretion in denying Defendant's motion to withdraw his guilty plea, where the factors that this Court is to consider in reviewing such a claim clearly weigh against Defendant's position.

### II. Application of USSG § 3C1.1 for Obstruction of Justice

Defendant next argues that the district court erred in applying a two-level enhancement under USSG § 3C1.1 for obstruction of justice. We review a district court's factual findings at sentencing for clear error, and its application of the sentencing guidelines *de novo*. *United States v. Pierce*, 17 F.3d 146, 151 (6th Cir.1994).

### A. Legal Standards

Section 3C1.1 provides that "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing, of the instant offense, ... increase the offense

level by 2 levels." USSG 3C1.1. Application note 4 to § 3C1.1 provides specific examples of the type of conduct to which this section applies, and specifically lists "perjury" as an example. USSG § 3C1.1 comment. (n.4(b)). In *United States v. Dunnigan*, 507 U.S. 87, 95, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993), the Supreme Court outlined the requirements necessary to support an obstruction of justice enhancement based on perjury. Specifically, the Court opined that the district court "must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice ... under the perjury definition." *Id.* This Court has interpreted *Dunnigan* to require the district court to "identify for the record at least some specific instances of conflicting testimony and specify which portions of the defendant's testimony he finds materially perjurious." *United States v. Spears*, 49 F.3d 1136, 1143 (6th Cir.1995) *abrogated on other grounds*, *United States v. Wells*, 519 U.S. 482, 117 S.Ct. 921, 137 L.Ed.2d 107 (1997). "Material information is information that, if believed, would tend to influence or affect the issue under determination." *United States v. Crousore*, 1 F.3d 382, 385 (6th Cir.1993) (citing USSG § 3C1.1 comment. (n.5)).

### B. Application of the Legal Standards to Defendant's Case

In finding that the two-level enhancement for obstruction of justice under USSG § 3C1.1 applied to Defendant's case, the district court opined as follows:

So, as far as the obstruction, there was going to be an issue in the case, the government was contending that the defendant said something and the implication of it was that he [Defendant] wasn't going to say anything because it was going to hurt, be dangerous for him to say, to do it because he had been in-volved in drug dealing. And the government wanted to introduce that at trial, I take it, Mr. Piper, is that correct?

MR. PIPER [PROSECUTOR]: That is correct, Your Honor.

THE COURT: And the defendant got on the stand because he wanted to show that any statement he gave was involuntary and not Mirandized. And I'm convinced based upon the officer's testimony by a preponderance of the evidence that the defendant's testimony was false, that is the statement. I think that it was intentionally false. It wasn't an accident that he was getting on the stand to testify to that. It was a material statement because it had to do with the purpose I just mentioned here, and the statement was under oath, and that is perjury. As far as obstruction or not, that takes case of obstruction.

(J.A. at 72–73.)

On appeal Defendant does not argue that the district court failed to make the requisite findings under *Dunnigan* and *Spears*. Rather, Defendant contends that the district court erred in finding that Defendant's statement at the suppression hearing that he had not been read his constitutional rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), was a "materially" false statement. Defendant argues that the statement was not material because it had "zero potential to affect the outcome of his case, as it was procedurally constituted at the time ... [because] the subject of the motion was the suppression of the physical evidence unrelated to any statement [Defendant] made." Def's Br. on Appeal at 12. Defendant further claims that he had no way of knowing that the statement made during the suppression hearing regarding the officer's failure to read him his

rights under *Miranda* would be material at trial. We disagree with Defendant's argument which is in complete contravention to the motion to suppress and statements made in connection thereto which provided the basis for the district court's application of the enhancement for obstruction of justice.

Although in the joint appendix Defendant provided a copy of his motion to suppress the money and firearm recovered from Defendant's vehicle as a result of the April 13, 1999 stop and search, Defendant failed to provide in the joint appendix a copy of the motion to suppress the cocaine recovered from his person as a result of the December 11, 2000 search. These motions to suppress were made separately and adjudicated separately. That is, the motion to suppress the evidence (money and gun) found in connection with the April 13, 1999 incident was made on June 13, 2001 (J.A. at 4, 23–26), and denied on July 10, 2001 (J.A. Docket Sheet at 7); the motion to suppress the evidence (cocaine) found in connection with the December 11, 2000, incident was made on March 16, 2001 (J.A. Docket Sheet at 4), and denied on April 4, 2001 (J.A. Docket Sheet at 5.) It is the statements that Defendant made in connection with the suppression hearing regarding the cocaine seized on December 11, 2000 (hereinafter "December 11, 2000 suppression motion"), that provided the basis for the § 3C1.1 enhancement, and yet it was that motion which was eliminated from the joint appendix. A copy of the December 11, 2000 suppression motion was obtained from the record along with a copy of the district court's order adjudicating the motion.

Upon examining the December 11, 2000 suppression motion, Defendant's argument that any statement that he may have made during the hearing on the December 11, 2000 suppression motion could not be considered "material" for purposes of applying the § 3C1.1 enhancement because Defendant was not moving to suppress any statements, just the cocaine recovered from his person, is unavailing.

Upon reviewing Defendant's December 11, 2000 suppression motion, we note that the first paragraph of the motion states as follows:

> NOW COMES the Defendant, James W. Murray, through counsel, and respectfully moves this Honorable Court for an order pursuant to Rule 12(3) of the Federal Rules of Criminal Procedure suppressing all evidence, *oral or tangible*, obtained directly or indirectly from … the illegal seizure and subsequent … interrogation of the Defendant on December 11, 2000, said … interrogation being in violation of Defendant's constitutional rights under the [ ] Fifth … Amendment[ ] to the United States Constitution.

As this paragraph clearly indicates, Defendant most certainly moved to suppress the statement that he made to the officers subsequent to his arrest on December 11, 2000.

In addition, a review of the testimony regarding the December 11, 2000 suppression motion, as set forth in Defendant's PSR, indicates that the following colloquy occurred between defense counsel and Defendant:

Q: Did he read you your rights?

A: No, he just stopped and said I'm pretty sure you know your rights.

Q: What did you say?

A: I didn't say nothing.

Q: Did you tell the officer that you didn't want an attorney present?

A: They didn't ask or know what I said.

Q: And they didn't ask, but did you verbally tell them, I don't want an attorney?

A: No.

Q: Did you tell them that you know what your rights are and you don't want them read to you?

A: No. They didn't ask if I wanted them read or anything. They said, only thing they said was I'm pretty sure–he said, Butler, Officer Butler, he had said, I'm sure you know your rights.

Q: And then did you talk to the officers?

A: At this time I made up a story and told them. I told them that I took the bag out from under the cab seat. And I was trying to steal it when the cab driver was inside of the store.

Q: And you made that story up?

A: Yes. Then after he said that was hard to believe, he kind of asked me what was really going on. And I told him I refused to talk. I never did say it would be difficult for me to do that, it would be dangerous. I just refused to talk. I didn't refuse to talk I just didn't talk.

Q: You didn't talk?

A: I didn't say anything.

(J.A. at 80–81.) As also explained in Defendant's PSR, this testimony was in direct conflict with testimony provided by Officer Butler:

> Prior to the defendant's testimony, Billy Butler, City of Manchester Investigator, had testified that he interviewed the defendant 90 minutes after his arrest at the gas station. Mr. Butler stated that he advised the defendant of his rights and that Mr. Murray wanted to speak with officers. The defendant then told Mr. Butler and a Drug Task Force agent that he stole the package of cocaine base from the cab driver. When Mr. Butler told him he did not believe that story and asked the defendant to

cooperate, the defendant refused. According to Mr. Butler, Mr. Murray said that it would be dangerous to cooperate, that he was not willing to cooperate and that "what's done is done."

(J.A. at 81.)

■ Defendant thus testified that he was not provided his rights under *Miranda* in an effort to suppress his alleged statements that it would be "dangerous for him to cooperate" and "what's done is done." Because Defendant's motion to suppress clearly sought to suppress his statements, Defendant's testimony that he was not provided his *Miranda* rights was material to the outcome of the motion because, if believed, the testimony would have "tend[ed] to influence or affect the issue under determination [the motion to suppress]." *Crousore*, 1 F.3d at 385. Thus, Defendant's testimony was "materially perjurious" and provided a sufficient basis for the application of USSG § 3C1.1. *Spears*, 49 F.3d at 1143.

### C. Conclusion

The district court did not err in applying a two-level enhancement under USSG § 3C1.1 for obstruction of justice.

III. **Defendant's *pro se* Challenge to the Sufficiency of the Evidence Regarding the § 924(c) Conviction**

In light of our conclusion that the district court did not abuse its discretion in denying Defendant's motion to withdraw his guilty plea, we need not address this issue on appeal.

### CONCLUSION

For the above-stated reasons, we AFFIRM Defendant's conviction and sentence.