**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Arneatha WILEY, Defendant–Appellant.**

**No. 02–6535.**

United States Court of Appeals, Sixth Circuit.

Dec. 15, 2003.

Tracy L. Berry, Asst. U.S. Attorney, Memphis, TN, for Plaintiff-Appellee.

William D. Massey, Massey & McCluskey, Memphis, TN, for Defendant-Appellant.

Before COLE and CLAY, Circuit Judges; and QUIST, District Judge.*

*ORDER*

Arneatha Wiley, represented by counsel, appeals her judgment of conviction and sentence. The parties have expressly waived oral argument, and this panel unanimously agrees that oral argument is not needed. Fed. R.App. P. 34(a).

In April 2001, Wiley was indicted by a federal grand jury. Thereafter, Wiley filed a motion to suppress certain statements and physical evidence. The district court held a suppression hearing. Wiley testified that she had not been apprised of her rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and that she had been tricked into signing a consent to search form that was filed in after she had signed it. Wiley's

---

* The Honorable Gordon J. Quist, United States District Judge for the Western District of  Michigan, sitting by designation.

testimony was contradicted by special agent Timothy Frank, among other witnesses. Thereafter, Judge Donald made the following findings:

The Court has to weigh the credibility of all of the witnesses in this case and in this instance the Court finds Ms. Wiley's testimony on the significant points to be not credible. The Court attaches greater credibility to the testimony of Officer Frank and finds that notwithstanding the mistake in the case report, Ms. Wiley was provided her Miranda warnings prior to the questioning and subsequent search.

The Court further finds that Ms. Wiley was provided a Consent to Search form, that she was explained [sic] what that was, and then after being explained [sic] the form, that she signed it and provide [sic] the officers consent to search.

\* \* \* \* \* \*

The Court further finds based on the testimony of Officer Rose and Sergeant Thomas, who [sic] the Court finds credible, that Mr. [sic] Wiley did not timely revoke her consent.

(J.A. 66–69, 92.) Judge Donald then denied Wiley's motion to suppress.

After a jury returned guilty verdicts against Wiley on multiple counts of fraud and mail fraud, Judge Nixon (who had presided over the trial) conducted the sentencing hearing. During the hearing, the government argued that Wiley should receive a two-level enhancement based on allegedly perjurious statements she had made at the suppression hearing before Judge Donald. See J.A. at 96–97 ("Her statements [at the suppression hearing] were that any consent form that she had, she was given, that the agents put their hand over the paper and she didn't know what she was consenting to; secondly, that she did not give consent to search her vehicle; and furthermore, that the search

of the home and the car were without her permission. There was also a statement that ... all these actions were done or that a lot of the actions were done in front of her children and her mother."). The government further argued that these statements were material because their purpose was to get the court to suppress evidence. The government then cited to Judge Donald's finding that Wiley's testimony was "not credible." (J.A. 97.) In response, Wiley argued that Judge Donald found only that the government's witnesses were more credible than Wiley, and never identified specific instances of material testimony that was perjurious. In adopting the two point enhancement, Judge Nixon summarily concluded that Judge Donald had "made the finding that the officers were telling the truth, that the defendant was not telling the truth, it was a material fact." He therefore left the presentence report as it was and sentenced Wiley to twenty months of imprisonment.

This court employs a clearly erroneous standard to review the district court's factual determination that a defendant's conduct obstructed justice, but reviews *de novo* whether that conduct actually amounts to obstruction of justice within the meaning of the guideline. *See United States v. Boyd,* 312 F.3d 213, 217 (6th Cir.2002); *United States v. Nesbitt,* 90 F.3d 164, 168 (6th Cir.1996). Under USSG § 3C1.1, a sentencing court is obligated to increase the defendant's offense level by two if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense." The commentary to that guideline provides that "committing, suborning, or attempting suborn perjury" is within the scope of conduct requiring sentence enhancement. *See* USSG § 3C1.1, comment. (n.3(b));

*United States v. Sassanelli,* 118 F.3d 495, 500 (6th Cir.1997). Moreover, the district court must identify the testimony which it finds to be false and make a finding that encompasses all of the factual predicates for a finding of perjury before the enhancement may be applied. *See Sassanelli,* 118 F.3d at 501; *United States v. Spears,* 49 F.3d 1136, 1143 (6th Cir.1995), *abrogated on other grounds, United States v. Wells,* 519 U.S. 482, 117 S.Ct. 921, 137 L.Ed.2d 107 (1997). This Court, however, has not insisted on strict adherence to this rule, "so long as the record below is sufficiently clear to indicate those statements that the district court considered to be perjurious and that the district court found that those statements satisfied each element of perjury." *Sassanelli,* 118 F.3d at 501.

Based on these standards, Judge Nixon's adoption of the two point enhancement was erroneous. The record is clear that Judge Donald's relevant finding at the suppression hearing was limited to the conclusion that Wiley's testimony was "not credible." In the context of imposing a two-point enhancement pursuant to U.S.S.G. § 3C1.1, however, "[i]t is not enough for a sentencing judge to recognize conflicting testimony and resolve in his own mind which witness is credible." *Spears,* 49 F.3d at 1143 (6th Cir.1995). Rather, "the sentencing judge must identify for the record at least some specific instances of conflicting testimony and specify which portions of the defendant's testimony he finds materially perjurious." *Id.* The judge also must explain "at least briefly ... why the intentional perjury was material." *Id.See also United States v. Dunnigan,* 507 U.S. 87, 95, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993) (holding that "a district court must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice, or an attempt to do the same.... When doing so, it is prefer-

able for a district court to address each element of the alleged perjury in a separate and clear finding.") Only such specific findings "provide a meaningful record for appellate review." *United States v. McRae,* 156 F.3d 708, 713 (6th Cir.1998).

Judge Nixon failed to identify any instances of conflicting testimony. Even the government, when arguing in favor of the enhancement, failed to point out specific instances of conflicting testimony. The government merely referred the district court to the ultimate factual findings Judge Donald had made at the suppression hearing. *Cf. United States v. Ledezma,* 26 F.3d 636, 644 (6th Cir.1994) ("While the district court did not identify specific statements as untruthful, the colloquy between the court and counsel did identify which statements the government claimed were untruthful."); *but cf. McRae,* 156 F.3d at 713 ("The enhancement may not be affirmed on an inference that the ruling was based upon the government's arguments.") (citing *Spears,* 49 F.3d at 1144). Even assuming that the conflicting testimony could be inferred from the record, "more than inference is required." *Spears,* 49 F.3d at 1144. Judge Nixon was required, but failed, to "identify with specificity" the areas of conflicting testimony. *Id.* He also failed to specify which portions of Wiley's false testimony were material.

Judge Nixon further erred by failing to make an explicit finding on the question of Wiley's purpose in making the false statements. Judge Nixon was required to find that the false testimony was made "willfully" to obstruct or impede the administration of justice during the course of her prosecution. U.S.S.G. § 3C1.1. Although it could be inferred that Wiley testified falsely to obstruct justice, the paper record does not foreclose the possibility that Wiley was mistaken. *See Dunnigan,* 507 U.S.at 95, 113 S.Ct. 1111 ("[A]n accused may give inaccurate testimony due to con-

fusion, mistake, or faulty memory."). This possibility may explain why Judge Donald was careful to describe Wiley's testimony as "not credible," as opposed to "based on lies" or "untruthful." Had Judge Nixon developed the evidence on the issue, he might have found that Wiley's purpose was innocent and thus did not justify enhancement. For this reason, Judge Nixon's error was not harmless. *Cf. U.S. v. Parrott,* 148 F.3d 629, 635 (6th Cir.1998) (holding that sentencing judge's failure to make specific finding that submission of false documents was willful was not harmless error; noting that the record on appeal did not foreclose a finding that the documents had been submitted for an innocent purpose).

For all the foregoing reasons, we VACATE and REMAND for specific findings regarding enhancement for obstruction of justice and for re-sentencing. *See Spears,* 49 F.3d at 1144.