NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0522n.06

No. 22-5573

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Dec 13, 2023
KELLY L. STEPHENS, Clerk

ERIK HENTZEN,

    Petitioner-Appellant,

v.

UNITED STATES OF AMERICA,

    Respondent-Appellee.

)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF
KENTUCKY

OPINION

Before: BOGGS, SUHRHEINRICH, and READLER, Circuit Judges.

BOGGS, Circuit Judge. Erik Hentzen was convicted of receipt and possession of child pornography, in violation of 18 U.S.C. § 2252(a)(2) and 18 U.S.C. § 2252(a)(4)(B), and was sentenced to 20 years in prison. Hentzen then appealed to this court, arguing that the prosecution presented insufficient evidence to convict and that the admission of a "grooming" video was improper. *United States v. Hentzen*, 638 F. App'x 427 (6th Cir. 2015) ("*Hentzen I*"). Finding that the body of evidence showed that Hentzen affirmatively sought out child pornography and the admission of the video was harmless error, this court affirmed the judgment and sentence of the district court. *Id*. at 427-35.

Hentzen filed a timely motion to vacate his conviction and sentence under 28 U.S.C. § 2255, asserting that his trial counsel was ineffective for failing to obtain and prepare qualified expert testimony to expose inaccuracies in, and otherwise contest, the government's computer-forensics evidence. A magistrate judge recommended that Hentzen's 28 U.S.C. § 2255

be denied and the district court adopted the findings. Hentzen filed a timely notice of appeal, asking this court to issue a certificate of appealability (COA). (*Hentzen v. United States*, No. 18-6168 ("*Hentzen II*") Order at 1-2). We granted Hentzen relief as to some of his ineffective-assistance-of-counsel claims, namely (1) his failure to obtain and prepare a competent expert, (2) ineffective assistance of trial counsel at the sentencing hearing, and (3) ineffective assistance of Appellate counsel claims. *Ibid*. The United States then moved to reverse the district court's denial of Hentzen's motion to vacate and to remand the case to the district court, as he was entitled to an evidentiary hearing with respect to the claims allowed by the COA. *Hentzen II*, 2019 U.S. App. LEXIS 14831, at *1 (6th Cir. May 17, 2019). This court vacated the district court's judgment and remanded the matter. *Id.* at *2-3.

In August 2021, a two-day evidentiary hearing was held. The court heard testimony from, among others, Dr. Andrew Cobb, a former University of Louisville professor, about the computer-forensics examination of Hentzen's computers and computer-related devices. Dr. Cobb opined that the investigators breached universally accepted procedures of computer forensics and analysis at the time Hentzen's equipment was seized and that the court heard inaccurate testimony with respect to how certain features of the Windows XP operating system functioned. Hentzen himself also testified during the evidentiary hearing about his trial counsel's representation of him and the evidence. Additionally, Kentucky Attorney General's Office Cyber Crimes Unit Forensic Examiner and Detective Michael Littrell also testified regarding certain "triage" procedures conducted on Hentzen's equipment at the time of seizure. He opined that the time stamps found on Hentzen's files that post-dated seizure were the result of the triage software used at the time Hentzen's computers and computer devices were seized.

In February 2022, Magistrate Judge Ingram issued a comprehensive Report and Recommendation, recommending denial of Hentzen's motion to vacate on his three remaining grounds: (1) his ineffective-assistance-of-trial-counsel's failure to obtain and prepare a competent expert, (2) his ineffective-assistance-of-trial-counsel at allocution at sentencing, and (3) his ineffective-assistance-of-appellate-counsel at sentencing claims. Magistrate Judge Ingram, however, also recommended the issuance of a COA only as to the first ground—Hentzen's ineffective-assistance-of-trial-counsel counsel claim—finding that reasonable jurists could find that Hentzen was prejudiced. The district court subsequently entered judgment in favor of the United States.

Hentzen now appeals, asserting that his trial counsel failed to provide him constitutionally adequate assistance of counsel as to the presentation of expert testimony regarding the computer-forensic evidence. Hentzen has failed to establish that his trial counsel's performance was either deficient or prejudicial, and we affirm.

## I. BACKGROUND

### A. *Hentzen* I

In 2014, a jury convicted Erik Hentzen of knowing receipt and possession of child pornography and he was sentenced to 240 months in prison. At the time, he was a 25-year-old student at the University of Kentucky. *Hentzen I*, 638 F. App'x at 428. Hentzen had a keen interest in computers, possessing seven computers and seventeen other computer-related devices capable of storing a combined seventeen terabytes of digital data. He also avidly downloaded and collected internet files including music, videos, and pornography using peer-to-peer networks like eDonkey. *Ibid.* To access eDonkey, Hentzen used a software client called eMule.

The Kentucky Attorney General's Cyber Crime Unit surveils peer-to-peer networks, including eDonkey, for the distribution of child pornography. To surveil these networks, the Unit uses remote forensics tools, including an automatic software that searches networks for common keywords associated with child pornography. When a computer shares files containing those keywords, the IP address of the computer and the hash values of the files are documented. A hash value is a unique digital fingerprint for each file that the Unit can use to identify files that match those of known child pornography. Between September and November of 2012, an agent detected many child-pornography files being shared by a single IP address on an unsecured internet router in Hentzen's apartment building. These files were traced to a laptop in Hentzen's apartment.

In March 2013, state law-enforcement officials executed a search warrant at Hentzen's apartment. Among the state law-enforcement officials were also computer-forensics experts with the Kentucky Attorney General's Office Cyber Crimes Branch, including investigator Thomas Bell.

Investigators testified that they found "the largest collection of computer equipment" they had seen in executing over 200 warrants. A total of seven computers, multiple external hard drives, and USB storage devices were seized from Hentzen's home. Investigators examined the devices on the scene and conducted a preliminary review of a laptop. The laptop's IP address matched the IP address that had previously been identified as downloading known child-pornography files prior to the execution of the search warrant. When investigators opened the laptop, it was running and showed all active downloads and uploads at the time. Recent and current downloads visible on Hentzen's computer screen included files with keywords that were clearly associated with child pornography. Hentzen was subsequently arrested.

Hentzen's computers and computer devices were submitted to forensic examination and were found to contain child pornography. Investigators found a total of 1,348 child-pornography images and 4,144 child-pornography videos on Hentzen's laptop. An additional 4,006 images and 2,461 videos, all believed to contain representations of child sexual abuse, were also located in a deleted state or stored within unallocated space, indicating that these files had been deleted or moved to another storage device. Further, investigators discovered a digital catalogue for commercial-grade child pornography and child-sexual-abuse images and videos for sale and multiple videos of animated child pornography depicting children engaging in sexual activity with adult men. Videos relating to exactly how to molest a child and how to "groom" a child into participating in abusive activities, as well as videos and images depicting bondage, torture, sado-masochistic behavior, and bestiality involving children were also contained within Hentzen's devices. All the evidence above was presented at trial.

The only contested issue at trial was whether Hentzen knew that the child-pornography files that had been found on his computer were, in fact, child pornography when he downloaded and possessed them. *Hentzen I*, 638 F. App'x at 429. The government presented a document detailing his last 30 searches on eMule as evidence that Hentzen knew that he was downloading child pornography. This document contained several known keyword terms pertaining to child sexual abuse and pornography, all entered individually. The government also presented evidence that two still images had been opened on an internet browser and some files had been opened using a view that shows the thumbnails of videos and images. The government introduced into evidence several examples of the files that were found on Hentzen's computer, including the catalogue and nine child-pornography videos, portions of which were played for the jury. These included a video

depicting a girl forced to engage in sexual activity with an animal as well as recordings of adult men sexually abusing young girls and, in one video, an infant.

Hentzen testified on his own behalf, asserting that he did not know that the files he was downloading were child pornography. *Hentzen I*, 638 F. App'x at 429-30. He testified that the files were on his computer through two different ways: (1) as a result of his side business of fixing his friends' computers in which he would copy all their media files onto his hard drives, or (2) because of his habit of searching the internet and batch downloading the top searches of the day. Hentzen explained that he developed a text file of all possible pornography keywords and would copy those keywords into the eMule search box and download any files that the program told him he did not already have. Hentzen maintained that he would generally not look at the names of the files, but rather the size of the file and how quickly it could download onto his computer. Using this batch downloading method, Hentzen testified that he downloaded at least 100,000 media files and had not watched most of them. Upon downloading the files, Hentzen would immediately open 25 different files at once to see if the files prompted an alert that they contained a virus or were otherwise corrupted. He testified that he would then move the uncorrupted files into a new labeled folder. If a folder was automatically created by the downloading software for a group of files, Hentzen would search for other files with that keyword and place them together in that folder.

The government presented rebuttal testimony from William Baker, investigating forensic examiner and investigations manager for the Cyber Crimes Unit at the Kentucky Attorney General's Office, regarding the files that were actively downloading when Hentzen's computer was seized. Baker testified that, for some of the child-pornography files, there was no evidence that any other downloads had begun during the downloading process for those files found actively

downloading on Hentzen's computer at the start of the seizure. Additionally, the forensic examiner noted that the still-downloading files had been downloaded individually.

After hearing the evidence, a jury convicted Hentzen. *Hentzen I*, 638 F. App'x at 430-31. He received a below-Guidelines sentence of 240 months of imprisonment. *Ibid.* Hentzen appealed, contesting the sufficiency of the evidence supporting his conviction, but this court affirmed. *Id.* at 431-37.

**B.** *Hentzen* **II**

Hentzen then filed a timely motion to vacate his conviction and sentence under 28 U.S.C. § 2255. *Hentzen II*, 2019 U.S. App. LEXIS 14831, at \*1. Among other things, Hentzen argued that his counsel was ineffective because his defense attorney failed to obtain and prepare qualified-expert testimony to expose alleged inaccuracies in, and otherwise contest, the government's use of computer evidence. *Id.* at \*3. To support his claim, Hentzen submitted an affidavit from Andrew Cobb, Ph.D., a forensic examiner and partner at One Source Discovery. *Hentzen II*, No. 18-6168 Order at 5. Ultimately, this court vacated and remanded the case to the district court so that an evidentiary hearing may be held. *Hentzen II*, 2019 U.S. App. LEXIS 14831, at \*1.

In his affidavit, Dr. Cobb reviewed the evidence and averred that the Kentucky Attorney General's investigators "breached universally accepted procedures" of computer-forensic data collection and analysis. *Hentzen II*, No. 18-6168 Order at 5. He argued that this compromised the integrity of the evidence after Hentzen's hard drives were taken into custody, "call[ing] into question the quality of the evidence, and all findings and opinions based on such evidence." Dr. Cobb also averred that examiner William Baker provided false testimony about certain features of the Windows XP Operating System, namely the creation and existence of "shortcut evidence," such as .lnk and thumbs.db files, on Hentzen's devices. Dr. Cobb contends that the government

used this piece of evidence to persuade the jury of Hentzen's guilt. *Ibid.* Hentzen argued that his counsel's failure to mitigate the government's "shortcut evidence" with evidence akin to Dr. Cobb's findings was "fatal" to his case.

Hentzen also argued that trial counsel was ineffective because he failed to obtain a "more reliable, competent, and persuasive" computer-forensics expert. *Hentzen* II, No. 18-6168 Order at 6. Hentzen contends that Brian Ingram, the forensics expert that his counsel retained, was "grossly inadequate" and compromised his counsel's ability to formulate sound trial strategy.

This court rejected Hentzen's argument that trial counsel was ineffective because of a failure to obtain a "more" competent expert. Explaining that the selection of a trial expert is a "paradigmatic example" of a "virtually unchallengeable" strategic choice, Hentzen had accordingly failed to demonstrate a reasonable probability that the outcome of his trial would have been different had counsel consulted another expert. We noted that counsel's investigation was thorough; he contacted several computer-forensics entities in search of a competent expert for Hentzen's case, a fact Hentzen himself admitted. Further, Hentzen noted that, after determining that Mr. Ingram's expertise was insufficient, counsel sought and retained another expert for the defense, Emmanuel Kressel. We concluded that, apart from mere speculation, Hentzen had failed to demonstrate a reasonable probability that the outcome of his trial would have been different had counsel retained a different, "more competent" expert.

With respect to Hentzen's "shortcut evidence" claim, however, this court remanded the issue for further proceedings. Explaining that this ineffective-assistance-of-counsel claim relied on off-the-record conversations between Hentzen and his counsel, Hentzen should be afforded an evidentiary hearing. *Id*. at 7. The court further noted that Hentzen had already met the burden for an evidentiary hearing through his § 2255 petition and affidavit. Because reasonable jurists could

debate whether Hentzen is entitled to an evidentiary hearing, the court explained that, logically, this would also mean that reasonable jurists could debate having resolved of Hentzen's "shortcut evidence" claim without such an evidentiary hearing.

On remand, the district court considered whether trial counsel was ineffective for failing to obtain and prepare qualified-expert testimony to expose inaccuracies in, and otherwise contest, the government's computer-forensics evidence. Following an evidentiary hearing, a magistrate judge recommended denying the motion to vacate but issuing a certificate of appealability (COA) for only this ground due to the fact-intensive nature of the inquiry. The district court agreed and adopted the magistrate judge's recommendation, denied the motion, and issued a COA. In issuing the COA, the district court noted that the question is very fact-intensive and reasonable jurists could debate whether Hentzen was prejudiced by the failure to introduce evidence as described by Dr. Cobb. Hentzen appeals.

## II. ANALYSIS

A defendant must make two showings to succeed on an ineffective-assistance-of-trial-counsel claim. First, he must show that counsel's performance "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). This means that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687.

When reviewing counsel's performance, we "indulge a strong presumption" that, "under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (citation omitted). Disagreement over trial strategy is not a basis for ineffective assistance of counsel. *Ibid.* In particular, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id*. at 690. This standard is extremely

deferential, as counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Ibid*. The inquiry involves eliminating "the distorting effects of hindsight . . . to evaluate the conduct from counsel's perspective at the time." *Id*. at 689.

Second, the defendant must establish that counsel's "deficient performance prejudiced the defense." *Id*. at 687. For counsel's error to be prejudicial, "[i]t is not enough… that [it] had some conceivable effect on the outcome of the proceeding." *Id*. at 693. Instead, there must be a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Ibid*. Counsel must have engaged in errors "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the [ultimate] judgment." *Id*. at 691.

Defendants alleging ineffective assistance of counsel bear "a heavy burden of proof." *Whiting v. Burt*, 395 F.3d 602, 617 (6th Cir. 2005). The "threshold issue is not whether [counsel] was inadequate; rather, it is whether he was so manifestly ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992). In reviewing ineffective-assistance-of-counsel claims, the goal is not to ensure that a criminal defendant is afforded perfect counsel, but rather "to ensure that the adversarial testing process works to produce a just result under the standards governing decision." *Strickland*, 466 U.S. at 687. The "proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id*. at 688.

This court reviews de novo the denial of a 28 U.S.C. § 2255 motion and will overturn the factual findings of the district court only if they are clearly erroneous. *Hamblen v. United States*, 591 F.3d 471, 473 (6th Cir. 2009). Ineffective-assistance-of-counsel claims present mixed questions of law and fact and are reviewed de novo. *Railey v. Webb*, 540 F.3d 393, 415 (6th Cir. 2008).

## A. Battle of the Experts

In his 28 U.S.C. § 2255 motion, Hentzen relies heavily upon the affidavit and testimony of his new expert, Dr. Andrew Cobb, at his evidentiary hearing to identify issues that he says his trial counsel should have responded to or raised. Dr. Cobb's affidavit was based on copies of evidence introduced at trial along with spreadsheets and other data files provided in discovery. At the evidentiary hearing, Dr. Cobb alleged that the computers and computer devices that were seized from Hentzen's residence and later admitted into evidence during trial were not properly handled. The Kentucky Office of Attorney General's Cyber Crimes Branch, according to Dr. Cobb's testimony at the hearing, mishandled Hentzen's items because they did not comply with applicable industry standards in their investigation. To support his claim, Dr. Cobb pointed to several thousand files that contained time stamps and dates after the evidence was taken into custody. Dr. Cobb testified at the evidentiary hearing that this could indicate "a variety of activity," but did not opine as to what caused the post-custody time stamps on those files.

During cross-examination, however, Dr. Cobb contradicted himself. Cobb admitted that the on-scene "triage" that investigators used on Hentzen's computer and computer devices, which involves running a particular program—OS Triage—to examine for suspect activity on devices during the execution of a search warrant, can result in post-custody timestamps. Moreover, Cobb

testified that on-scene triage is, in fact, acceptable practice in this precise investigatory situation: when investigators see contraband on the screen and suspect that file encryption may be involved.

This acceptable practice is in line with the testimony of Detective Mike Littrell, a forensic examiner and detective with the Kentucky Attorney General's Office Cyber Crimes Unit, who testified that triage is (1) a part of basic forensic protocol; (2) can be performed on site without a further search warrant; and (3) results in additional post-seizure dates being placed on a file. Further, Detective Littrell noted that the "created" file dates—the only forensic date of importance in a child-pornography case—were not modified. Dr. Cobb acknowledged that none of Hentzen's child-pornography files in question contained any creation dates that post-dated the search warrant.

Dr. Cobb also contested the testimony of William Baker, the government's forensic examiner, with respect to how certain shortcut files—.lnk and thumbs.db files found on Hentzen's computer—were created. Examiner Baker testified that a .lnk file is created when a file is opened and a thumbs.db file is created by Windows software when a file is either viewed or opened in icon or display view. Cobb argued, however, that .lnk files may also be created using two other methods: right clicking on a file and creating a shortcut link, and moving an already existing .lnk file from one device to another. Notably, however, Dr. Cobb conceded that the .lnk files, as well as the actual child-pornography files, in question matched the existing file paths on Hentzen's computer, noting that there was no evidence that the .lnk files were copied or had traveled from another computer onto Hentzen's computer.

Likewise, Dr. Cobb also disagreed with Examiner Baker's testimony about the creation of thumbs.db files. Cobb testified that a thumbs.db file appears when a file is opened and viewed in icon view or when a file is moved from one computer to another, even if it was never opened. Cobb conceded, however, that there was no evidence that the thumbs.db files in question were

copied from another computer to Hentzen's computer; the actual child-pornography files upon which the thumbs.db files were created already existed on Hentzen's computer. Stated simply, Dr. Cobb concluded that the shortcut files in question, .lnk and thumbs.db files, as well as the actual child-pornography files, both existed, and that they had matching file paths on Hentzen's computer and computer devices; there was no evidence that they were copied onto Hentzen's devices.

Lastly, Dr. Cobb attempted to discredit Examiner Baker's rebuttal testimony with respect to Hentzen's batch-downloading defense. While Hentzen testified that he did not have an awareness of exactly what he was downloading because his practice was to download several files at once, Baker testified in rebuttal that this was untrue because certain downloaded files on Hentzen's computer had different timestamps, rather than a single one indicative of batch downloading. Cobb, however, noted that the creation times of the files revealed a pattern of many files sharing a single timestamp on Hentzen's eMule folder.

The magistrate judge recommended denying Hentzen's motion to vacate, finding that Hentzen's counsel was not deficient or prejudicial. The magistrate judge explained that, had Dr. Cobb testified at trial, the testimony would not have had any meaningful effect to undermine the government's credibility with respect to its data-collection methods.

Similarly, the magistrate judge explained that Dr. Cobb simply presented his own speculation regarding how thumbs.db and .lnk files could have been copied and transferred from another computer onto Hentzen's own computer; there was no real evidence supporting this method of shortcut file creation. Finding that the weight of the evidence clearly pointed to the fact that the child-pornography files were accessed on Hentzen's computer and computer devices, the magistrate judge found that Dr. Cobb's highlighting of "minor" inconsistencies was ultimately insignificant. The magistrate judge found that, even taking Hentzen's batch-downloading

testimony as true against that of Baker's rebuttal, no prejudice resulted, considering the volume and strength of evidence against Hentzen**.** The district court agreed and denied the § 2255 motion.

We agree. Hentzen has failed to show that, had Dr. Cobb's speculative critiques of counsel based on the evidentiary record at trial been presented to the jury at said trial, the result would have been different. In fact, at the evidentiary hearing, Dr. Cobb conceded on several key issues asserted in his affidavit, including the industry standards of acceptable triage practice, the creation and presence of "shortcut evidence," and the time stamps associated with Hentzen's downloading patterns. Thus, Hentzen's argument fails to demonstrate that counsel's performance was deficient or that the trial outcome would have been different. Considering the evidence, he has done quite the opposite.

## B.  Preparation of Computer-Forensics Evidence

On appeal, Hentzen claims that counsel was unprepared to address the government's computer-forensics evidence. He argues that his counsel was deficient because he should have been prepared to show that investigators mishandled seized computer-forensics evidence and that the government's expert provided inaccurate testimony. The jury, he argues, did not have the opportunity to hear mitigating evidence as to how the computer evidence was seized. Had they had that opportunity, Hentzen claims, the integrity of the government's computer evidence would have been undermined.

Hentzen's failure-to-challenge argument fails. As acknowledged by Dr. Cobb himself, the evidence was handled properly. Dr. Cobb's own testimony noted that an exception to the general industry practice of powering down devices upon seizure applied to this case—when contraband was visible on the screen. Thomas Bell testified at trial that Hentzen's computer was in the process of actively downloading content using eMule software at the time the search warrant was executed

and that the names and keywords of those files were indicative of child pornography and immediately visible to the investigators. Thus, the subsequent decision by investigators to triage Hentzen's computers and computer devices was a reasonable one.

Expert testimony, including that of Dr. Cobb, contravenes Hentzen's argument. As mentioned above, Dr. Cobb himself conceded that the post-custody timestamps that he once argued were significant were a result of the triaging on Hentzen's computer at the time the search warrant was executed. Likewise, Detective Littrell testified that changes in the times and dates of files were an "expected outcome" of the process. Both Dr. Cobb and Detective Littrell agreed that the created dates of the child-pornography files were the most significant pieces of evidence and were never modified in this case.

Hentzen's counsel testified at the evidentiary hearing that he consulted not one but two forensic experts, both of whom raised no issues with the forensic methods used by the government. Counsel stated that, had his experts found an issue with the forensics, he would have made the strategic choice to contest the evidence presented by the government. Counsel's strategic choice to forgo countering this evidence, therefore, was sound trial strategy that exercised reasonable professional judgment. As such, counsel cannot be considered deficient or prejudicial for a failure to challenge the computer-forensics evidence.

## C. Importance of Computer-Forensics Evidence Admitted to Trial

Relying on Dr. Cobb's opinion, Hentzen also challenges counsel's failure to contest the accuracy of the government's expert testimony. He argues that counsel allowed the government expert to testify inaccurately and did not provide appropriate factual context regarding the nature of shortcut files on his devices. Hentzen argues that their existence does not necessarily mean that he opened the original, existing child-pornography files upon which the shortcut files were made,

but rather that the files could be on his device through other means, such as transferring the files from another device onto his own. This argument also fails under *Strickland*.

As mentioned, Dr. Cobb presents mere speculation, not evidence, relating to the alternative ways in which .lnk and thumbs.db shortcut files can be created. Regarding the child-pornography videos in question, Dr. Cobb conceded that the .lnk and thumbs.db shortcuts traced back to and matched file paths with those found on Hentzen's computer. Simply stated, the actual files upon which the shortcut files were based were on Hentzen's computer; there is no evidence that the shortcut files were on Hentzen's computer through other means.

Hentzen correctly identifies two instances in which Examiner Baker's trial testimony was incorrect: (1) eMule was installed on more than one, not just on one, of Hentzen's computers, and (2) Baker's assertion that Hentzen downloaded some files individually or in small batches of a few files at a time was not supported by Hentzen's eMule history, which in fact favored Hentzen's claim that he mostly batch-downloaded his files in bulk.

For an ineffective-assistance-of-counsel claim to prevail, however, the question is whether counsel's failure to highlight these errors in Baker's testimony fell below professional standards and prejudiced Hentzen's defense. While Hentzen's counsel may have failed to highlight the presence of eMule on multiple devices, Hentzen himself stated this fact to the jury in his own testimony. As such, this point did not require a qualified expert to testify, and Hentzen cannot fault counsel for deficiency on this ground. In addition, it would not seem that this discrepancy is either relevant or harmful.

Likewise, whether counsel contended that some, most, or all of Hentzen's contraband files were downloaded individually or in batches does not render his performance ineffective. Hentzen argues that, had trial counsel been effective, he would have been able to undermine the confidence

in the computer-forensics evidence. This would, in turn, provide the jury with reasonable doubt that Hentzen knew he downloaded child pornography and produce a different result.

There is no doubt, however, that Hentzen had knowledge of what he was doing. Regardless of the downloading method, it is uncontested that thousands of child-pornography files were downloaded onto Hentzen's computer. Accomplishing this necessarily required Hentzen to knowingly search in specific places and for specific terms on the internet. A survey of Hentzen's last 30 searches on eMule alone showed terminology referring to known darknet child-pornography production studios and websites, titles and abbreviations for child pornography known to law enforcement, known terminology added to the ends of file names to disguise child pornography files from the authorities, and the words "toddler" in Dutch and "daughter," "sister," and "brother" in German. Counsel's failure to challenge Baker's testimony was not prejudicial to Hentzen, considering the evidence. Under *Strickland*, Hentzen again fails to prove that counsel's performance was deficient and that the outcome of his proceeding would have been different.

Lastly, Hentzen claims that, had his counsel been constitutionally adequate, he would have been able to keep out of the trial record an allegedly prejudicial animated "grooming video" that he claims was erroneously introduced into evidence. This would, in Hentzen's view, have warranted a reversal for a new trial on his direct appeal. Hentzen also asserts that, had counsel been effective, he would have been able to undermine this piece of "significant circumstantial evidence." *Hentzen I*, 638 F. App'x at 431.

Again, Hentzen's argument fails. As this court previously held, the admission of the video evidence was one of harmless error. *Id*. at 435. Whether the admission of improperly admitted 404(b) evidence "substantially swayed" a jury "generally depends on whether the properly

admissible evidence of defendant's guilt was overwhelming." *Id*. at 434. Again, Hentzen fails to show that his counsel was ineffective or prejudicial.

The weight of properly admitted evidence in this case is overwhelming. For Hentzen to acquire thousands of images and videos of minors engaged in sexual abuse and sexual conduct, he intentionally inserted keywords and phrases that he knew related to child pornography into a search box on a peer-to-peer network, directed the program to search for files that matched those known terms, selected the files to download from a screen that revealed the file names, instructed the computer to download those files, and eventually removed them from his incoming folder to other locations. As this court previously held, the admission of an isolated video in light of the evidence is not substantial or prejudicial. There was no undermining of the properly admitted evidence in this case; the "limited" use of single video weighed against the body of "horrifying" evidence presented did not materially affect the outcome of the case. *Hentzen I*, 638 F. App'x at 435.

**AFFIRMED.**